

32

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MARK W. DOBRONSKI,**
an individual,

           Plaintiff,

v.

**LIFE PROTECT 24/7, INC.,**
a Virginia corporation,

           Defendant.

Case:2:22-cv-10707
Judge: Steeh, George Caram
MJ: Ivy, Curtis
Filed: 03-29-2022 At 01:48 PM
CMP DOBRONSKI V. LIFE PROTECT 24/7
INC (DA)

---

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

---

## COMPLAINT

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against Defendants alleges:

1. This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*, the Michigan Home

Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.*, and the Michigan

Consumer Protection Act ("MCPA"), M.C.L. § 445.901, *et seq.*

## Parties

2. Plaintiff is an individual, of the age of majority, a citizen of the United

States of America, has a residence in Lima Township, Washtenaw County, Michigan,

and has a place of business in the City of Westland, Wayne County, Michigan.

3. Upon information and belief, Defendant LIFE PROTECT 24/7, INC. ("LP")

is a corporation organized and existing under the laws of the State of Virginia, having

a principal office located at 3509 Virginia Beach Boulevard, Virginia Beach, Virginia

23452.

## Jurisdiction

4. This Court has jurisdiction over the subject matter of this complaint

pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

5. This Court has limited personal jurisdiction over Defendant LP pursuant to

M.C.L. § 600.715 as a result of the defendant transacting any business within the

state; doing or causing any act to be done, or consequences to occur, in the state

resulting in an action for tort; and/or contracting to insure any person, property, or

risk located within this state at the time of contracting.

## Venue

6. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received in this judicial district.

## General Allegations

7. In response to widespread public outrage over intrusive telemarketing calls, the United States Congress acted to prevent entities, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

8. According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls."

9. Congress explicitly found that robo-calling is an invasion of privacy.

10. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is

growing by 30 percent every year. It is telephone terrorism, and it has got to stop...."

See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

11. In enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

12. Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement and carry out the TCPA.

13. The TCPA implementing regulations, at 47 C.F.R. § 64.1200, promulgate in relevant part:

> "(a) No person or entity may: . . .
>
> (1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice; ...
>
> (iii) To any telephone number assigned to a paging service, **cellular telephone service**, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call...
>
> (2) Initiate, or cause to be initiated, any telephone call that

includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization, or a call that delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103...

(d) No person or entity shall initiate any call for telemarketing purposes to a **residential telephone subscriber** unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for

5

telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes **must** provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. . . ." [Emphasis added.]

14. The TCPA regulations at, 47 C.F.R. § 64.1601(e), additionally promulgate in relevant part:

"Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) **must** transmit caller identification information.

(1) For purposes of this paragraph, **caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer**. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed

and the seller's customer service telephone number. **The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.**

(2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information." [Emphasis added.]

15.  The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action,

as follows:

"PRIVATE RIGHT OF ACTION.  **A person or entity** may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –

(A) an action based on a violation of this **subsection or the regulations prescribed under this subsection** to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation**, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

16.  Pursuant to Congressional mandate set forth at 47 U.S.C. § 227(c)(1), the

FCC adopted regulations establishing a national "do not call" database and

prohibiting any person from making or transmitting a telephone solicitation to the

telephone number of any subscriber included in such database, which regulations are

set forth at 47 C.F.R. § 64.1200(c), and promulgate in relevant part:

> "No person or entity shall initiate any telephone
> solicitation to:...
>
> "(2) A **residential telephone subscriber** who has
> registered his or her telephone number on the national
> do-not-call registry of persons who do not wish to receive
> telephone solicitations that is maintained by the Federal
> Government...."

17. Additionally, the TCPA, at 47 U.S.C. § 227(c)(5), as it relates to telephone

numbers appearing of the do-not-call list, provides for a private right of action, as

follows:

> "Private right of action. A person who has received more
> than one telephone call within any 12-month period by or
> on behalf of the same entity in **violation of the regulations
> prescribed under this subsection** may, if otherwise
> permitted by the laws or rules of court of a State bring in an
> appropriate court of that State—
>
> (A) an action based on a violation of the regulations
> prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such
> a violation, or to receive up to $500 in damages **for each
> such violation**, whichever is greater, or
>
> (C) both such actions.
>
> It shall be an affirmative defense in any action brought

under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

18. The TCPA regulations, at 47 C.F.R. § 64.1200(e), promulgate:

"The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'"

19. The FCC has held that telephone subscribers who have listed their wireless telephone number on the national do-not-call list are deemed to be "residential subscribers". See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, 14039, ¶ 36 (2003).

20. The MTCCCA, at M.C.L. § 484.125, promulgates in relevant part as follows:

"A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to do [] the following: ...

9

"(b) Deliver or attempt to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller identification information that would otherwise be available to the subscriber...

(5) A subscriber contacted by a caller in violation of this section may bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees...

(9) A caller who violates this section is guilty of a misdemeanor, punishable by a fine of $1,000.00 or imprisonment for 10 days, or both."

21. The MHSSA, at M.C.L. § 445.111a(5), promulgates:

". . . A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal [do-not-call] list."

22. The MHSSA, at M.C.L. § 445.111b, promulgates in relevant part:

"(1) At the beginning of a telephone solicitation, a person making a telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request. A natural person must be available to answer the telephone number at any time when telephone solicitations are being made..."

23. The MHSSA, at M.C.L. § 445.111c, promulgates in relevant part as follows:

"(1) It is an unfair or deceptive act or practice and a violation of this act for a telephone solicitor to do any of

10

the following:...

(f) Fail to comply with the requirements of section 1a or 1b.

(2) ... [A] person who knowingly or intentionally violates this section is guilty of a misdemeanor punishable by imprisonment for not more than 6 months or a fine of not more than $500.00, or both.

(3) A person who suffers loss as a result of violation of this section may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees."

24. The MCPA, at M.C.L. § 445.903, promulgates in relevant part as follows:

"(1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows: ...

(a) Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions...

(w) Representing that a consumer will receive a rebate, discount, or other benefit as an inducement for entering into a transaction, if the benefit is contingent on an event to occur subsequent to the consummation of the transaction...."

25. The MCPA, at M.C.L. § 445.911, provides for a private right of action, as follows:

"(1) Whether or not a person seeks damages or has an adequate remedy at law, a person may bring an action to do either or both of the following:

(a) Obtain a declaratory judgment that a method, act, or practice is unlawful under section 3.

(b) Enjoin in accordance with the principles of equity a person who is engaging or is about to engage in a method, act, or practice that is unlawful under section 3.

(2) Except in a class action or as otherwise provided in subsection (3), a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees...."

26. Plaintiff's cellular telephone number is 734-XXX-9671.

27. Plaintiff uses his cellular telephone number 734-XXX-9671 primarily as a residential telephone line to engage in personal communications with family and friends and others of a non-business nature.

28. Plaintiff's cellular telephone number 734-XXX-9671 is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and has been so listed continuously since at least December 9, 2004 and at all times relevant hereto.

29. By listing his cellular telephone number on the National Do Not Call Registry, Plaintiff has given constructive notice to the world, including the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls

at his cellular telephone number.

30.  Plaintiff's residential telephone number is 734-XXX-2424.

31.  Plaintiff's residential telephone number (734-XXX-2424) is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and has been so listed continuously since at least June 29, 2003 at all times relevant hereto.

32.  By listing his residential telephone number on the National Do Not Call Registry, Plaintiff has given constructive notice to the world, including the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his residential telephone number.

33.  The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015).

34.  Plaintiff is a customary user of the called telephone lines, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same.  Thus, Plaintiff has standing to bring

this action for alleged violations of TCPA's robocall provisions. See *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (C.A.3, 2015).

35. At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendant.

36. At no time has Plaintiff provided permission to the Defendant to engage in telephone solicitation with the Plaintiff via telephone.

37. Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

38. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

39. The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act*

*of 1991*, Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

40. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

41. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendant's calls.

42. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendant caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

43. Each and every call placed without consent by Defendant alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

44. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

45. Plaintiff's telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God. Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

46. Defendant Life Protect is engaged in the business of, *inter alia*, selling medical alert alarm systems.

47. Upon information and belief, Defendant LP, as part of its marketing program, either directly, or through a third-party telemarketing call center, utilize an automated telephone platform which dials consumer cellular telephone numbers *en masse* to solicit consumers via pre-recorded voice messages as to whether a consumer has interest in a personal medical alert alarm system.

48. Defendant is well aware of the proscriptions against robocalls as set forth in the TCPA, as Defendant has been sued in both federal and state courts across the United States, including class actions, on numerous occasions. Yet, Defendant continues engaging in illegal telephone solicitations.

## **Call Number 1**

49. On July 14, 2021, at approximately 3:54 P.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's cellular telephone number (734-xxx-9671).

50. The caller identification number displayed was 734-352-7286.

51. Upon answering the telephone, Plaintiff heard a pre-recorded voice message which stated:

> "Hello. This is Amy with Medical Services. You were recently recommended by a medical professional to receive an emergency medical alert system at no cost to you. And, your system is ready to be shipped. Press 1 now and hold the line to receive your medical alert system at no cost. One in three Americans over the age of 60 fall every year in the US and it could be the last. Don't be a statistic and hold the line to receive your no cost medical alert system. Press 1 now. Press 9 to opt out. [2 tones.]"

52. In order to better identify the caller, Plaintiff pressed '1'. The call went to dead air and then disconnected.

53. Plaintiff dialed the caller identification number displayed (734-352-7286)

and received a recorded message stating "The person you have dialed has a voice mail that is not yet set up."

## Call Number 2

54. On July 15, 2021, at approximately 2:26 P.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's cellular telephone number (734-xxx-9671).

55. The caller identification number displayed was 734-761-8007.

56. Upon answering the telephone, Plaintiff heard a pre-recorded voice message identical to the message set forth in paragraph 51, *supra*.

57. In order to better identify the caller, Plaintiff pressed '1' and was connected to a live telemarketer who identified herself as "Della" with "Medical Alert."

58. Della then solicited Plaintiff to acquire a "free" medical alert system, only having to pay $44.99 per month for monitoring.

59. Plaintiff engaged in an investigative technique termed a "canary trap" by providing Della with controlled false identifying information, including the name of "Steven Meraman" and a credit card number designed to decline, but log, the transaction. As anticipated, the credit card was "declined" and Plaintiff feigned that he needed to call his bank to determine why.

60. Immediately upon terminating the call, Plaintiff telephoned his credit card

institution and learned that a transaction had been attempted by "Med Alert" of Roanoke, Virginia, telephone number 888-313-7236.

61. Plaintiff dialed telephone number 888-313-7236, which was answered "Thank you for calling Life Protect 24/7".

62. Plaintiff dialed the caller identification number displayed (734-761-8007) and received a recorded message stating "Thank you for calling State Street Auto."

## Call Number 3

63. On September 21, 2021, at approximately 9:41 A.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's residential telephone number (734-XXX-2424).

64. The caller identification number displayed was 734-426-2936.

65. Upon answering the telephone, Plaintiff heard a pre-recorded voice message identical to the message set forth in paragraph 51, *supra*.

66. In order to better identify the caller, Plaintiff pressed '1', The call went to dead air and then disconnected.

67. Plaintiff dialed the caller identification number displayed (734-426-2936) and received a recorded message stating "the number you have reached has been disconnected or is no longer in service."

## Call Number 4

19

68.   On October 13, 2021, at approximately 9:51 A.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's residential telephone number (734-XXX-2424).

69.   The caller identification number displayed was 734-426-9622.

70.   Upon answering the telephone, Plaintiff heard a pre-recorded voice message identical to the message set forth in paragraph 51, *supra*.

71. In order to better identify the caller, Plaintiff pressed '1', The call went to dead air and then disconnected.

72.   Plaintiff dialed the caller identification number displayed (734-426-9622) and received a recorded message stating "the number you have reached has been disconnected or is no longer in service."

### Call Number 5

73.   On October 22, 2021, at approximately 9:30 A.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's residential telephone number (734-XXX-2424).

74.   The caller identification number displayed was 734-426-2223.

75.   Upon answering the telephone, Plaintiff heard a pre-recorded voice message identical to the message set forth in paragraph 51, *supra*.

76. In order to better identify the caller, Plaintiff pressed '1', The call went to

dead air and then disconnected.

77. Plaintiff dialed the caller identification number displayed (734-426-2223) and received a recorded message stating "the number you have reached has been disconnected or is no longer in service."

## Call Number 6

78. On October 25, 2021, at approximately 11:36 A.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's residential telephone number (734-XXX-2424).

79. The caller identification number displayed was 734-426-6599.

80. Upon answering the telephone, Plaintiff heard a pre-recorded voice message identical to the message set forth in paragraph 51, *supra*.

81. In order to better identify the caller, Plaintiff pressed '1', The call went to dead air and then disconnected.

82. Plaintiff dialed the caller identification number displayed (734-426-6599) and received a recorded message stating "the number you have reached has been disconnected or is no longer in service."

## Call Number 7

83. On November 5, 2021, at approximately 12:47 A.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's residential telephone

number (734-XXX-2424).

84. The caller identification number displayed was 734-426-9900.

85. Upon answering the telephone, Plaintiff heard a pre-recorded voice message identical to the message set forth in paragraph 51, *supra*.

86. In order to better identify the caller, Plaintiff pressed '1', The call went to dead air and then disconnected.

87. Plaintiff dialed the caller identification number displayed (734-426-9900) which was answered "Griffin Pest Services." Upon inquiring further, the answering party knew nothing about a "free" medical alert alarm system.

## Call Number 8

88. On October 25, 2021, at approximately 11:36 A.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's residential telephone number (734-XXX-2424).

89. The caller identification number displayed was 734-426-1833.

90. Upon answering the telephone, Plaintiff heard a pre-recorded voice message identical to the message set forth in paragraph 51, *supra*.

91. In order to better identify the caller, Plaintiff pressed '1', The call went to dead air and then disconnected.

92. Plaintiff dialed the caller identification number displayed (734-426-1833)

and the line rang but was not answered.

## Call Number 9

93.    On November 12, 2021, at approximately 9:56 A.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's residential telephone number (734-XXX-2424).

94.    The caller identification number displayed was 734-426-2830.

95.    Upon answering the telephone, Plaintiff heard a pre-recorded voice message identical to the message set forth in paragraph 51, *supra*.

96.    In order to better identify the caller, Plaintiff pressed '1', The call went to dead air and then disconnected.

97.    Plaintiff dialed the caller identification number displayed (734-426-2830) and the line rang but was not answered.

## Call Number 10

98.    On November 18, 2021, at approximately 9:41 A.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's residential telephone number (734-XXX-2424).

99.    The caller identification number displayed was 734-426-8247.

100.    Upon answering the telephone, Plaintiff heard a pre-recorded voice message identical to the message set forth in paragraph 51, *supra*.

101. In order to better identify the caller, Plaintiff pressed '1', The call went to dead air and then disconnected.

102. Plaintiff dialed the caller identification number displayed (734-426-8247) and received a recorded message stating "thank you for contacting Saint James Dexter..."[1]

## COUNT I
## VIOLATION OF THE TCPA - AUTOMATED CALL

103. Plaintiff incorporates the allegations of paragraphs 1 through 102, *supra*.

104. The telephone calls identified as Call Number 1 through Call Number 10, inclusive, *supra*, were each in violation of the TCPA and its implementing regulations, specifically 47 U.S.C. § 227(b)(1)(A) and  47 C.F.R. § 64.1200(a), as Defendant or Defendant's agent initiated a telephone call using an artificial or prerecorded voice to a telephone number assigned to a cellular telephone service or a residential line without the prior express written consent of the called party.

105.  The aforesaid violations were wilful and/or knowing.

## COUNT II
## VIOLATION OF THE TCPA - FAILURE TO IDENTIFY CALLER

106. Plaintiff incorporates the allegations of paragraphs 1 through 102, *supra*.

---

[1] Saint James Episcopal Church, located in Dexter, Michigan.  Plaintiff does not believe it reasonable to believe that a church would be telemarketing medical alert systems.

107. The telephone calls identified as Call Number 1 through Call Number 10, inclusive, *supra*, were each in violation of the TCPA regulations, specifically 47 C.F.R. § 64.1200(b)(1) and/or 47 C.F.R. § 64.1200(d)(4), as Defendant or Defendant's agent did not, at the beginning of the message, state clearly the identify of the business that was responsible for initiating the call.

108. The aforesaid violations were wilful and/or knowing.

## COUNT III
## VIOLATION OF THE TCPA - FAILURE TO PROVIDE NUMBER

109. Plaintiff incorporates the allegations of paragraphs 1 through 102, *supra*.

110. The telephone calls identified as Call Number 1 through Call Number 10, inclusive, *supra*, were each in violation of the TCPA regulations, specifically 47 C.F.R. § 64.1200(b)(2) and/or 47 C.F.R. § 64.1200(d)(4), as Defendant or Defendant's agent did not, during or after the message, state clearly the telephone number of such business.

111. The aforesaid violations were wilful and/or knowing.

## COUNT IV
## VIOLATION OF THE TCPA - INVALID CALLER ID

112. Plaintiff incorporates the allegations of paragraphs 1 through 102, *supra*.

113. The telephone calls identified as Call Number 1 through Call Number 10, inclusive, *supra*, were each in violation of the TCPA regulations, specifically 47

C.F.R. § 64.1601(e)(1), as Defendant or Defendant's agent failed to provide caller identification number information which would permit any individual to make a do-not-call request during regular business hours.

114. The aforesaid violations were wilful and/or knowing, as Defendant or Defendant's agent had to take deliberate and overt action to manipulate the caller identification information to provide false information.

failing to provide caller identification number information which would permit any individual to make a do-not-call request during regular business hours.

## COUNT V
## VIOLATION OF THE TCPA - DO NOT CALL

115. Plaintiff incorporates the allegations of paragraphs 1 through 102, *supra*.

116. The telephone calls identified as Call Number 1 through Call Number 10, inclusive, *supra*, were each in violation of the TCPA regulations, specifically 47 C.F.R. § 64.1200(c)(2), as Defendant or Defendant's agent initiated a telephone solicitation to a residential telephone subscriber who has registered his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government

117. The aforesaid violations were wilful and/or knowing.

## COUNT VI
## VIOLATION OF THE MTCCCA

26

118. Plaintiff incorporates the allegations of paragraph 1 through 102, *supra*.

119. The telephone calls identified as Call Number 1 through Call Number 10, inclusive, *supra*, were each in violation of the MTCCCA, specifically M.C.L. § 484.125(2)(a), as Defendant or Defendant's agent used a telephone line to contact a subscriber at the subscriber's residential, business, or toll-free telephone number to deliver a recorded message for the purpose of presenting commercial advertising to the subscriber and the subscriber has not knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller; and/or M.C.L. 484.125(2)(b), the caller delivered intrastate commercial advertising having activated a feature to block the display of caller identification information that would otherwise be available to the subscriber.

## COUNT VII
## VIOLATION OF THE MHSSA

120. Plaintiff incorporates the allegations of paragraphs 1 through 102, *supra.*

121 The telephone calls identified as Call Number 1 through Call Number 10, inclusive, *supra*, were each in violation of the MHSSA, specifically M.C.L. § 445.111a(5), as Defendant or Defendant's agent made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list; and/or M.C.L. § 445.111b(1), as Defendant or Defendant's agent did not, at the beginning of the telephone solicitation, state the full name of the

organization.

## COUNT VIII
## VIOLATION OF THE MCPA

122. Plaintiff incorporates the allegations of paragraphs 1 through 102, *supra*.

123. The telephone calls identified as Call Number 1 through Call Number 10, inclusive, *supra*, were each in violation of the MCPA, specifically M.C.L. § 445.903(c), as Defendant or Defendant's agent engaged in unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce by representing that a medical professional had recommended that Plaintiff receive an emergency alert system, when no such medical professional had made such a recommendation; and M.C.L. § 445.903(r), as Defendant or Defendant's agent represented that the medical alert system was at no cost to Plaintiff and ready to be shipped, when in fact Defendant had no intention of shipping the device unless Plaintiff first agreed to pay monthly monitoring charges.

### PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendant, as follows:

A. 1. As to Count I: Damages in the amount of $500.00 for each of the 10 violations, for damages of $5,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $15,000.00.

28

2. As to Count II: Damages in the amount of $500.00 for each of the 10 violations, for damages of $5,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $15,000.00.

3. As to Count III: Damages in the amount of $500.00 for each of the 10 violations, for damages of $5,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $15,000.00.

4. As to Count IV: Damages in the amount of $500.00 for each of the 10 violations, for damages of $5,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $15,000.00.

5. As to Count V: Damages in the amount of $500.00 for each of the 10 violations, for damages of $5,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $15,000.00.

6. As to Count VI: Damages in the amount of $1,000.00 for each of the 10 violations, for damages of $10,000.00.

7. As to Count VII: Damages in the amount of $250.00 for each of the 10 violations, for damages of $2,500.00.

8. As to Count VIII: Damages in the amount of $250.00 for each of the 10 violations, for damages of $2,500.00.

The total amount of damages being sought herein is $90,000.00, and in the

event of a default judgment is the sum certain amount of damages that will be sought.

B. An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C. An injunction enjoining Defendants from initiating any telephone calls to Plaintiff's cellular telephone line.

D. Interest accruing from the date of filing until paid at the statutory rate; and,

E. Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: March 29, 2022

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

# **VERIFICATION**

State of Michigan          )
                                       )  ss;
County of Washtenaw    )


MARK W. DOBRONSKI, being first duly sworn, does depose at state, as follows:

1. I am the Plaintiff in the foregoing matter, of the age of majority, and I have direct and personal knowledge of the facts in dispute.

2. I have read the Complaint in the foregoing matter, and I know the contents thereof. The matters stated in the Complaint are true in substance and in fact, except as to those matters stated to be upon information and belief, and as to those matters I believe them to be true.

3. If sworn as a witness, affiant can testify competently to the facts as set forth in the Complaint.

Further, affiant sayeth naught.


_____
Mark W. Dobronski

Subscribed and sworn to before me
this __29th__ day of March, 2022.


_____

```
Anton Chernyak
Notary Public - State of Michigan
County of Washtenaw
My Commission Expires 2/28/2026
```

31

PRESS FIRMLY TO SEAL          PRESS FIRMLY TO SEAL

U.S. POSTAGE PAID
PM 1-DAY
DEXTER, MI
48130
MAR 29, 22
AMOUNT
**$8.95**
R2305H130928-09

1022          48226

# UNITED STATES
# POSTAL SERVICE®

# PRIORITY®
# MAIL

- Date of delivery specified*
- USPS TRACKING™ included to many major
  international destinations.
- Limited international insurance.
- Pick up available.*
- Order supplies online.*
- When used internationally, a customs
  declaration label may be required.

  * Domestic only

EP14F Oct 2018
OD: 12 1/2 x 9 1/2

This envelope is made from post-consumer waste. Please recycle - again.

FROM:

MARK W DOBRONSKI
PO BOX 85547
WESTLAND, MI 48185-0547

TO:

UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700

22-10707

25

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments.

EXPECTED DELIVERY DAY: 03/30/22

USPS TRACKING® #



9505 5123 0462 2088 8936 22



USPS.COM/PICKUP



PS00001000014

* Domestic only.   ✕ For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.